UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GHASSAN HOUBOUS BOUARI, | Case No. 2:21-CV-226 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant(s). | |

Presently before the court is defendant United States of America's (the "government") motion to dismiss (ECF No. 4).  Plaintiff Ghassan Houbous Bouari ("Bouari") filed a response (ECF No. 12), to which the government replied (ECF No. 15)

## I. BACKGROUND

Bouari brings this suit arising out of his arrest, indictment, and pretrial detention of 560 days for alleged participation in a money-laundering scheme.  (ECF No. 1).[1]  His indictment was eventually dismissed on August 9, 2017 by this court.  (*Id.* at ¶ 93).  He subsequently filed suit against the United States based on the actions of two former Special Agents for the Federal Bureau of Investigation ("FBI"), agents Charles Ro and Dennis Lao.  (*Id.* at 1).  Bouari brings this action for money damages based on claims of malicious prosecution and intentional infliction of emotional distress pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–80.  (*Id.* at ¶ 19).

---

[1] Bouari also filed suit for money damages under a *Bivens* action based on the same claims presented here, all of which were dismissed with prejudice. *See Bouari v. USA*, case no. 18-cv-219 (D. Nev.).

**James C. Mahan**
**U.S. District Judge**

According to the complaint, the FBI undertook a "reverse sting" operation targeting Bouari's half-brother, Emile Bouari, for money laundering. (*Id.* at ¶ 12). Bouari was ultimately indicted for his alleged participation in the scheme, along with his half-brother and two other co-conspirators. (*Id.* at ¶ 75). He was arrested on February 6, 2016, and remained in detention until August 18, 2017, nine days after this court's dismissal of his indictment on August 9, 2017. (*Id.* at ¶¶ 80–93). On November 27, 2017, Bouari moved for a certificate of innocence, but this court denied that motion, stating, "[t]he government's dismissal of an indictment is not tantamount to a finding of innocence regarding the underlying charges." Order, *Bouari*, No. 16-cr-32 (D. Nev.) (ECF 123).

Bouari alleges that fabrication of evidence by federal agents led to the torts of malicious prosecution and intentional infliction of emotional distress. *Id.*

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires every complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Although Rule 8 does not require detailed factual allegations, it does require more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, a complaint must have *plausible* factual allegations that cover "all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citation omitted) (emphasis in original); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

The Supreme Court in *Iqbal* clarified the two-step approach to evaluate a complaint's legal sufficiency on a Rule 12(b)(6) motion to dismiss. First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678–79. Legal conclusions are not entitled to this assumption of truth. *Id.* Second, the court must consider whether the well-pleaded factual allegations state a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the court can draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. When the allegations have not

**James C. Mahan**
**U.S. District Judge**

crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

If the court grants a Rule 12(b)(6) motion to dismiss, it should grant leave to amend unless the deficiencies cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments . . . undue prejudice to the opposing party . . . futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The court should grant leave to amend "even if no request to amend the pleading was made." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted).

### III. DISCUSSION

#### A. Probable Cause

This case boils down to one issue: probable cause. If the federal agents had reasonable probable cause to initiate arrest and subsequently indict Bouari for the crimes of aiding and abetting a money laundering scheme, there can be no tort claim. If, on the other hand, Bouari's claims of evidence fabrication to sustain probable cause for his arrest prevail, then the court must allow his tort claims to move forward.

The Federal Tort Claims Act (FTCA) was established to provide an exclusive tort remedy against the federal government. "Sovereign immunity is an important limitation on the subject matter jurisdiction of federal courts." *Vacek v. U.S. Postal Service*, 447 F.3d 1248, 1250 (9th Cir. 2006) (citations omitted). Thus, the government's consent to be sued "is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The FTCA waives sovereign immunity, but that waiver is subject to several exceptions that must be strictly construed in the government's favor. *Cadwalder v. United States*, 45 F.3d 297, 300 (9th Cir. 1995).

The FTCA does not waive sovereign immunity for claims against the United States "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or

**James C. Mahan**
**U.S. District Judge**

- 3 -

not the discretion involved be abused." *Chadd v. United States*, 794 F.3d 1104, 1108 (9th Cir. 2015) (quoting 28 U.S.C. § 2680(a)).  Discretionary function immunity applies where "(1) the challenged conduct . . . involve[s] an element of judgment or choice; and (2) 'that judgment must be of the kind that the discretionary function exception was designed to shield.' " *Kelly v. United States*, 241 F.3d 755, 760 (9th Cir. 2001) (quoting *Reed v. United States Dep't of the Interior,* 231 F.3d 501, 503 (9th Cir. 2000) (alteration omitted)).

To survive a motion to dismiss, plaintiff must "allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Terbush v. United States*, 516 F.3d 1125, 1130 (9th Cir. 2008) (citing *Gaubert*, 499 U.S. at 324–25).  Once plaintiff does so, "the burden of proving the applicability of the discretionary function exception" is on the government.  *Id.* at 1128.

### B.  FTCA Analysis Against Nevada Tort Law

Bouari concedes he is not challenging the decision of the FBI agents to investigate him or any of the tactical decisions or other investigatory conduct in the case.  (ECF No. 12 at 9). Therefore, the government does not raise a discretionary function exception defense.[2]  (ECF No. 15 at 1).

Instead, Bouari's claims are limited to malicious prosecution manifested in agents Lao and Ro purportedly lying in their FBI reports and to prosecutors and the grand jury in order to press criminal charges.  (ECF No. 12 at 9).  Bouari's claim of intentional infliction of emotional distress arises out of the precedent malicious prosecution.  The court takes Bouari's claims of malicious prosecution and intentional infliction of emotional distress in turn.

### i.  Malicious Prosecution

In Nevada, the elements for malicious prosecution are (1) want of probable cause to initiate criminal proceedings; (2) malice; (3) favorable termination; and (4) damages.  *Jordan v. Bailey*, 944 P.2d 828, 834 (Nev. 1997).  "Want of probable cause is judged by an objective test;" the court is required to decide whether a reasonable attorney "would have considered the prior

---

[2] The government does reserve the right to raise this defense later in the case should the evidence give rise to such a defense. (ECF no. 15 at 1).

**James C. Mahan**
**U.S. District Judge**

- 4 -

action legally untenable." *Id.* It is well established that probable cause is "not a high bar" to reach. *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018). The court's analysis begins and ends with the first factor.

Bouari was suspected by federal agents of being involved in the relevant money laundering scheme because he brought a "money counting machine" to his half-brother's hotel room to help count the illicit $60,000 in cash in the presence of undercover agents Ro and Lao. Bouari does not dispute this fact but sets it forth in his complaint. (ECF No. 1 ¶ 101(a)). This single, undisputed fact is fatal to Bouari's argument that probable cause did not exist.

The court finds that a reasonable attorney could have considered Bouari's actions as perceived "involvement" in the crime afoot in that hotel room, and therefore probable cause was sufficient to justify an arrest.

Bouari alleges that the federal agents fabricated other evidence[3] to support his ultimate indictment. Yet, Bouari fails to allege facts sufficient to show that federal agents could not reasonably find probable cause with simple observance of Bouari's presence in the hotel room and facilitation of the suspected money laundering transaction. Bouari contends that the invitation for him to bring the money counting machine up to the room was a "contrivance" effectuated by agents Ro and Lao even though they "knew" he was not substantively involved. (ECF No. 1 at ¶ 100(a)). This is conclusory and the court cannot find any supporting facts on the record to uphold the assertion.

To show the government's knowledge at the time of the sting, the government points to the underlying criminal proceedings surrounding this scheme in which Bouari's half-brother, Emile, made a recorded inculpatory statement about Bouari's involvement with the scheme. (ECF No. 4 at 9). Emile told an undercover agent that he and Bouari worked out a deal so that "[they] use [Bouari's] bank accounts and [Bouari's] company" for the money-laundering scheme. Gov. Response to Motion to Dismiss, *Bouari*, No. 16-cr-32 (D. Nev.) (ECF No. 96 at

---

[3] Namely, the "false assertion" that Bouari opened prostitution parlors in Florida and recruited Asian, Latin, or Russian women to act as commercial sex workers (*see* ECF No. 1 ¶ 101(c)-(d)).

**James C. Mahan**
**U.S. District Judge**

- 5 -

5).[4]  This previous allegation, coupled with the presence of Bouari in the hotel room during the transaction, further supports the court's finding that a reasonable attorney could ascertain probable cause that Bouari was involved in the conspiracy.[5]

Bouari does not dispute his half-brother made these recorded statements or that agents Ro and Lao knew about them at the time they observed Bouari bringing the money counter to the hotel room.  Instead, Bouari instructs the court that it cannot consider extrinsic statements of fact when analyzing a 12(b)(6) motion to dismiss.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  Bouari is correct that courts are cautioned not to take judicial notice of extrinsic *disputed* facts, as the court did in *Lee*.  However, the difference here is that this court is taking judicial notice of an *undisputed* finding in the previous criminal proceedings; which the court does to buttress its understanding of what an objective attorney might view as probable cause under similar circumstances pursuant to Nevada law.

Even if Bouari takes issue with this judicial notice, sufficient probable cause still existed by virtue of Bouari's presence and perceived involvement in the money laundering scheme.  Indeed, Bouari was ultimately indicted for "*aiding and abetting*" both the $60,000 hotel transaction and overall conspiracy of money laundering in the amount of $590,000, not committing the actual crimes.  (ECF No. 1 at ¶¶ 12, 119).

"[I]n order to prove that a defendant aided and abetted a crime, the Government need only show that the defendant intentionally associated himself with criminal activity and by his active participation sought to make it succeed."  *United States v. Batimana*, 623 F.2d 1366, 1368 (9th Cir. 1980).  Knowledge and participation in a conspiracy may be inferred from circumstantial evidence and from a defendant's actions.  *Id.*  The Ninth Circuit clarified: "acts

---

[4] The court may take judicial notice of an adjudicative fact so long as it's not reasonably disputed and is "generally known within the trial court's territorial jurisdiction." Fed. R. Crim. P. 201(b). Thus, this court takes judicial notice of this recorded statement because it finds it difficult to see how a recorded statement entered into evidence in a case before this same court, on the same matter, could be reasonably disputed.

[5] Under Ninth Circuit precedent, the court is also afforded discretion to find a statement (or even failure to rebut a statement) a judicial admission.  *See Gospel Missions of Am. v. City of L.A.*, 328 F.3d 548, 557 (9th Cir. 2003) ("[Courts] have discretion to consider a statement made in briefs to be a judicial admission.");  *accord Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226-27 (9th Cir. 1988) (statements in briefs and failures to deny fact can be deemed judicial admissions at court's discretion).

which seem otherwise innocent, when viewed in the context of the surrounding circumstances, may justify an inference of complicity." *Id*. Therefore, the court finds that the federal agents had reasonable probable cause to perceive Bouari was *somehow* involved in the money-laundering conspiracy based on the facts presented.

Bouari further refutes this probable cause finding by arguing that the federal agents did not "represent" to Bouari during the transaction that the $60,000 was derived from unlawful activity. *See* 18 U.S.C. § 1956(a)(3)(A). Bouari contends he was completely ignorant of the illicit activity in the room and therefore the agents had no reasonable probable cause to be arrested. (ECF No. 12 at 22). Bouari is mistaken. 18 U.S.C. § 1956(a)(3)(A) provides what the government must prove to convict a *commission* of the act of money laundering, not aiding and abetting. *Id.* This is a critical distinction.

The court is also persuaded by the government's analysis that large sums of money can be strong evidence that criminal activity was "likely afoot." (ECF No. 4 at 4); *see United States v. Padilla*, 888 F.2d 642, 644 (9th Cir. 1989) (characterizing $40,000 as an "extremely large amount" of money that most "law-abiding wage earners" do not keep lying around) (citation omitted); *United States v. $93,685.61 in U.S. Currency*, 730 F.2d 571, 572 (9th Cir. 1984) (extremely large amount of money itself is strong evidence of criminal activity).

Finally, under Nevada law, a grand jury indictment creates a rebuttable presumption of probable cause which is overcome only by allegations that it was procured by false or fabricated evidence. *Jordan v. State ex rel. DMV & Publ Safety*, 110 P.3d 30, 48-49 & n.65 (Nev. 2005), *overruled on other grounds by Buzz Stew, LLC v. City of N. Las Vegas,* 181 P.3d 670 (2008).

Bouari seeks to poke holes in the relevant indictment by drawing a "reasonable inference" that federal agents Lao and Ro relied on the same "falsehoods" in their FBI reports when presenting to the grand jury. (ECF No. 12 at 17). Bouari can only rely on inferences because grand juries are generally shrouded in secrecy. Fed. R. Crim. P. 6(e). The court is not prepared to impugn the grand jury proceedings at issue here based on this inference alone—especially considering that there was sufficient probable cause to suspect Bouari potentially aided and abetted the money-laundering scheme based on the facts at hand. Thus, Bouari has not

James C. Mahan
U.S. District Judge

- 7 -

satisfactorily rebutted the presumption of probable cause with sufficient evidence of fabrication undergirding the original indictment.

### ii. Intentional Infliction of Emotional Distress (IIED)

To prevail on an IIED claim, a plaintiff must show "(1) extreme and outrageous conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation." *Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998). Bouari's IIED claim fails at the outset because this court does not find his arrest, subsequent indictment, and pretrial detention to be "extreme and outrageous conduct" since it was based on reasonable probable cause. *See supra*, Part III.B.i.

In sum, the court does not find a plausible claim under the Federal Tort Claims Act here. This claim cannot be cured with additional facts since Bouari does not dispute his presence at the transaction or bringing the money counter to the scene—facts fatal to his claim that probable cause did not exist.

## IV.  CONCLUSION

Accordingly, and pursuant to the foregoing,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the government's motion to dismiss (ECF No. 4) be, and the same hereby is, GRANTED. Bouari's claims are DISMISSED with prejudice.

The clerk is hereby instructed to close the case.

DATED October 7, 2021.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**